UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VALERY RUKAVISHNIKOV,

      Plaintiff,

v.                               Case No. 3:22-cv-898-MMH-PDB

FLORIDA DEPARTMENT
OF CORRECTIONS,

      Defendant.[1]

_____

## ORDER

### I. Status

Plaintiff Valery Rukavishnikov, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action by filing a pro se Civil Rights Complaint (Doc. 1)[2] under 42 U.S.C. § 1983 with exhibits (Docs. 1-1 to 1-5). Rukavishnikov proceeds on a Second Amended Complaint (Doc. 29). Rukavishnikov, who alleges he suffers from chronic hepatitis C virus (HCV), asserts that Defendant FDOC violated the Eighth Amendment, Title II of the

---

[1] Although Rukavishnikov refers to "Defendants" in the plural form multiple times in the Second Amended Complaint, he names only one defendant in the caption and "The Parties" section of the pleading: the Florida Department of Corrections. See Second Amended Complaint (Doc. 29) at 1, 3.

[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act (RA) when it implemented a cost-saving policy that sanctioned the delay of medically necessary treatment for Rukavishnikov's chronic HCV infection. Id. at 2, 16-21. As relief, Rukavishnikov seeks declaratory relief, compensatory and punitive damages, as well as attorney's fees and costs. Id. at 19, 21.

This matter is before the Court on FDOC's Motion to Dismiss (Motion; Doc. 38) with exhibits (Docs. 38-1 to 38-2). Rukavishnikov filed a response in opposition to the Motion. See "Motion for Opposition Responce [sic] to Defendant's Motion to Dismiss" (Response; Doc. 41). He also submitted exhibits in support of the Response. See Doc. 41-1. The Motion is ripe for review.

## II. Rukavishnikov's Allegations[3]

As to the specific facts underlying his Eighth Amendment, ADA, and RA claims, Rukavishnikov asserts that he entered FDOC custody in 1993. See Second Amended Complaint at 11. Rukavishnikov alleges FDOC medical staff diagnosed him with HCV in 1999, and later referred him to a chronic illness clinic for monitoring after he developed chronic HCV. Id. He maintains that

---

[3] In considering the Motion, the Court must accept all factual allegations in the Second Amended Complaint as true, consider the allegations in the light most favorable to Rukavishnikov, and accept all reasonable inferences that can be drawn from such allegations. Holland v. Carnival Corp., 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the Second Amended Complaint, and may well differ from those that ultimately can be proved.

chronic HCV is a serious medical need that can cause, inter alia, liver inflammation, liver fibrosis, cirrhosis, and possible death. Id. at 4-5. Rukavishnikov asserts that in 2013, a new class of drugs known as direct-acting antivirals (DAAs) became available to HCV patients. Id. at 7. He alleges that DAAs are oral medications with few side effects that cure HCV at a rate of 90 to 95%. Id. According to Rukavishnikov, in 2014, the American Association for the Study of Liver Diseases and the Infectious Disease Society of America recommended DAA treatment for all persons with chronic HCV. Id. at 8. And since 2014, DAA treatment "has been the standard of care for the treatment of HCV." Id.

Rukavishnikov contends that from late 2013, when DAAs first became available, until approximately October 2017, FDOC had a policy and practice of refusing to provide treatment to HCV-infected inmates in order to save costs. Id. at 9-10. Despite knowing that DAA treatment was the standard of care for chronic HCV since 2014, Rukavishnikov alleges FDOC failed to provide DAAs to him and "thousands of other[] HCV-infected inmates throughout the state, in contravention of the prevailing standard of care and with deliberate indifference to the serious medical needs of inmates with chronic HCV in Florida." Id. at 10. According to Rukavishnikov, FDOC's cost-saving policy did not end until 2017 when FDOC was "court-ordered[] to begin providing DAA[]s to HCV-infected inmates." Id. (footnote omitted) (citing to Hoffer v. Jones, 290

3

F. Supp. 3d 1292 (N.D. Fla. 2017) and <u>Hoffer v. Inch</u>, 382 F. Supp. 3d 1288 (N.D. Fla. 2019)). Rukavishnikov also alleges that he did not learn of DAAs until FDOC was ordered to provide treatment based on the <u>Hoffer</u> litigation.[4] <u>Id.</u> at 8.

Rukavishnikov asserts that his condition was such that DAA treatment was medically necessary for him as early as December 2013. <u>Id.</u> at 13. Despite this, he maintains FDOC only monitored his condition with routine blood draws and did not provide him with DAAs or any other treatment for chronic

---

[4] In the <u>Hoffer</u> litigation, the Northern District of Florida certified a class consisting of "all current and future prisoners in the custody of the [FDOC] who have been diagnosed, or will be diagnosed, with" HCV. <u>Hoffer v. Jones</u>, 323 F.R.D. 694, 700 (N.D. Fla. 2017). The plaintiffs sued the FDOC Secretary in her official capacity, alleging the denial of DAAs under a cost-savings policy violated, <u>inter alia</u>, the Eighth Amendment. <u>Id.</u> at 696. Following an evidentiary hearing, on November 17, 2017, the court granted the plaintiffs' request for a preliminary injunction. <u>See</u> <u>Hoffer v. Jones</u>, 290 F. Supp. 3d 1292, 1306 (N.D. Fla. 2017). After resolving issues raised on summary judgment, on April 18, 2019, the court entered a permanent injunction mandating that the FDOC provide DAA treatment for all HCV-positive inmates, including those with only mild or no liver fibrosis, and finding that "[t]he only reason why FD[O]C is electing not to provide [DAA] treatment is due to the cost of treatment, which is per se deliberate indifference." <u>Hoffer v. Inch</u>, 382 F. Supp. 3d 1288, 1302 (N.D. Fla. 2019).

The Secretary appealed, and on August 31, 2020, the Eleventh Circuit vacated the district court's permanent injunction; reversed the court's finding that the Secretary's treatment of HCV-positive inmates with no (F0) or mild (F1) fibrosis violated the Eighth Amendment, "with instructions to award summary judgment to the Secretary on that issue"; and remanded the rest of the district court's order, "so that it can make the findings required by the PLRA." <u>Hoffer v. Sec'y, Fla. Dep't of Corr.</u>, 973 F.3d 1263, 1279 (11th Cir. 2020). The Eleventh Circuit reasoned that the Eighth Amendment does not prohibit prison officials from considering cost in determining what type of medical treatment to provide, and since the Secretary had implemented a treatment plan that provides "minimally adequate care," the plaintiffs cannot say that her conduct in treating HCV-positive inmates amounted to deliberate indifference. <u>Id.</u> at 1277-78.

HCV. <u>Id.</u> at 11-12. According to Rukavishnikov, FDOC also denied his repeated requests for HCV treatment. <u>Id.</u> at 11. In December 2017, Rukavishnikov alleges he was administered testing to check the stage and progression of his HCV infection, the results of which showed that he had advanced fibrosis. <u>Id.</u> at 12. Nevertheless, he alleges he did not begin treatment with DAAs until August 2018. <u>Id.</u> at 14. Rukavishnikov contends that as a result of FDOC's failure to timely provide him with necessary medical care and treatment for chronic HCV, he has suffered "abnormal fibrosis, significant or severe liver pain and inflammation activity, mental confusion, disorientation and depression," <u>id.</u> at 15, as well as "persistent and extreme fatigue and low energy, increased muscle weakness, dizziness, joint pain, abdominal discomfort and distension, poor appetite, and nausea," <u>id.</u> at 14.

Based on these facts, Rukavishnikov asserts that FDOC's conduct amounts to deliberate indifference to his serious medical needs in violation of the Eighth Amendment. <u>Id.</u> at 2, 10-11. He also alleges that FDOC has failed to accommodate his chronic HCV disability or provide adequate medical care under the ADA, and that FDOC's actions have violated the RA. <u>Id.</u> at 16-22.

### III. Summary of the Arguments

In its Motion, FDOC argues that the Court should dismiss the Second Amended Complaint because (1) Rukavishnikov failed to properly exhaust his administrative remedies, and (2) the statute of limitations bars

Rukavishnikov's claims. <u>See</u> Motion at 3-10. Rukavishnikov responds that the Court should not dismiss his claims because (1) he exhausted his administrative remedies, and (2) he timely filed this lawsuit within the statute of limitations. <u>See</u> Response at 7-12.

## IV. Analysis

### A. Exhaustion of Administrative Remedies

#### 1. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2004); <u>see also</u> <u>Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't</u>, 476 F. App'x 364, 366 (11th Cir. 2012)[5] (noting that exhaustion is a "threshold matter" that must be addressed first) (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. <u>See</u> 42 U.S.C. § 1997e(a); <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). A prisoner

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

such as Rukavishnikov, however, is not required to plead exhaustion. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" <u>Id.</u> Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." <u>Woodford</u> <u>v. Ngo</u>, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[6] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one

---

[6] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Supreme Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Because failure to exhaust administrative remedies is an affirmative defense, FDOC bears "the burden of proving that [Rukavishnikov] has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838-39 (11th Cir. 2020). Here, Rukavishnikov submitted grievance records as exhibits to his original Complaint as well as his Response. See Docs. 1-1 to 1-5; Doc. 41-1. Likewise, FDOC has submitted declarations and grievance records with its Motion. See Docs. 38-1 to 38-2. The parties neither dispute the accuracy of this record evidence, nor request an evidentiary hearing. Bryant, 530 F.3d at 1377 n.16.

Thus, the Court considers the record evidence solely for purposes of addressing the parties' competing contentions regarding exhaustion. In evaluating whether Rukavishnikov has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

### 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-

103.007. However, under certain specified circumstances, an inmate can bypass the informal grievance stage and start with a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). For instance, an inmate may skip the informal grievance stage and file a formal grievance for medical issues or to allege an ADA violation. <u>See</u> <u>id.</u> An inmate can also completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). If an inmate is permitted to bypass the informal grievance stage and begin with a formal grievance at the institutional level, the formal grievance must be received no later than fifteen days from the date on which the incident or action being grieved occurred. <u>Id.</u> Grievance appeals to the Office of the FDOC Secretary must be

received within fifteen days from the date that the response to the formal grievance is returned to the inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c).

According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. <u>See</u> Fla. Admin. Code R. 33-103.014(1).

### 3. Rukavishnikov's Exhaustion Efforts

In support of its argument that Rukavishnikov failed to exhaust his administrative remedies before filing this lawsuit, FDOC submits the Declaration of FDOC Grievance Officer Marcia G. Miller (Miller Decl.), <u>see</u> Doc. 38-1 at 1, and the Declaration of FDOC Operation Analyst Lawanda

Sanders-Williams (Sanders-Williams Decl.), <u>see</u> Doc. 38-2 at 1. Miller states in relevant part that:

> 2.      At the request of the Office of the Attorney General, I have reviewed available grievance records stored in FDC's Central database and at Union C.I. for Valery Rukavishnikov, DC# 193920, between January 1, 2011, and August 15, 2022. . . .
>
> 3.      During that time period, Mr. Rukavishnikov did not receive any approved informal or formal grievances related to receiving DAA medications for his HCV infection.

Miller Decl. at 1.[7]

Based on her review of Rukavishnikov's grievance records from January 1, 2011, to August 15, 2022, Sanders-Williams states in her declaration that FDOC's Bureau of Policy Management and Inmate Appeals "received two submissions from Mr. Rukavishnikov related to receiving DAA medication for treatment of his HCV infection," <u>see</u> Sanders-Williams Decl. at 1, which are quoted below:

---

[7] The Court notes that Miller's Declaration includes grievance summary logs, which list all grievances Rukavishnikov filed during the time period between January 1, 2011, and August 15, 2022. <u>See</u> Doc. 38-1 at 2-27. The summary logs identify each grievance by type (i.e., "class code"), but do not otherwise set forth the actual content of each grievance. As such, it is difficult to discern which of the listed grievances concerned treatment of Rukavishnikov's chronic HCV.

### a.  2019 Formal Grievance and Grievance Appeal

On September 6, 2019, Rukavishnikov submitted a formal grievance (#1909-213-042) to Union Correctional Institution (Union CI):

> This is a grievance to exhaust[] administrative remedies in regard to HCV (Hepatitis C) treatment pursuant to <u>Hoffer v. Jones</u>, Case No 4:17-cv-24-MW/CAS.
>
> Pursuant to my medical condition the treatment I've received was unsuccessful in regard to HCV. I am in need of further treatment for this serious medical state of health considering my age and the amount of time exposed [sic] to the virus. Becaus[e], I still have a sever [sic] – alarming problems concerning my liver and my kidneys which apparently being affected too. Occasionally I feel a sharp pain in upper-right side of my liver and I am constantly experiencing a steady aching pain of my kidneys which occures [sic] in my lower back. In my case perhaps a stronger direct acting antivirus (DAA) such as "Harvony" is necessary to completely get rid of any Hepatitis C virus or symptoms in order to help the liver to heal it-self, rebuild it-self, and restor [sic] its proper function.
>
> On June 30 or about I sent inmate request to Health Services Administrator seeking medical attention for further treatment of my liver and kidneys. Unfortunately, I did not get any reply. Additionaly [sic], to the same HCV medical issue on June 23, or about I sent inmate request to the medical records office asking for a copy of my HCV record. I also on 8-15-19 I sent informal grievance. Regreatfuly [sic], I've still not received any copies I ordered yet. Even the simple act of request process showes [sic] how the medical deliberate indifferance [sic] is exercised.
>
> <u>Relief Sought</u>

1) Schedule another treatment perhaps with DAA drugs such as "Harvony" to prevent further detariation [sic] of my liver, kidneys, and my health in general.
2) Please schedule a food diet and some othe [sic] medication to help restore the liver and kidneys to their proper functions.

On behalf of many thousand inmates I am enormously greatful [sic] to Florida DOC authority for their decidive [sic] action to completely cure HCV apidemic [sic] in Florida prison population.

See Doc. 38-2 at 7-8. On September 25, 2019, Union CI denied the formal

grievance, stating in pertinent part:

Your request for Administrative Remedy or Appeal has been received, reviewed and evaluated.

Inmate RUKAVISHNIKOV, your Hepatitis C Treatment will be handled in accordance with FDC procedures and applicable treatment protocols. Reviewed records indicate that you were seen by the Clinician on July 12, 2019, and are being monitored.

You are being treated in accordance with FDC policy and procedure.

Based on the above information, your grievance is denied.

See Doc. 38-2 at 9. Rukavishnikov subsequently submitted a grievance appeal

(#19-6-36799), dated October 10, 2019, in which he stated:

This is an Appeal to the Denial at the Instutional [sic] leve[l] of Medical Grievance to Ex[h]austed Administrative Remedies in regard to HCV treatment [p]ursuant to Hoffer v. Jones, Case No. 4:17 cv 214-MW/CAS.

15

> The Grievance filed on 9-6-19, Denied on 9-25-19. Mailed on 9-27-19. Appellant received notice of denial via institutional mail on 10-01-19.
>
> The opinion of the denial based on statement: On July 12, 2019 appellant was seen by clinician and has been treated in accordance with FDC policy and procedure.
>
> However, with my great respect to clinician and FDC policy I still have some worries and concerns in regard to my liver and kidneys and my health in general. According to my medical records I've been diagnosesed [sic] with HCV positive since 1999. In 2018 I completed HCV treatment course. Unfortunately, I still suffer with some continuing HCV symptoms, such as: [o]ccasional pain of liver, kidneys, including anoraxia [sic], malaise, fatigue, easily catching flu, moisture in the lungs, and breathing problems . . .
>
> Therefore I am asking for another treatment, perhaps with the stronger Direct Acting Antivirus (DAA) such as "Harvony" to completely get rid of any Hep. C virus or symptoms in order to prevent further deterioration of my liver, kidneys, and my health in general. Also, I am asking for med. food diet to help the liver heal itself, rebuild itself, and restore its proper function.

See Doc. 38-2 at 6. On November 25, 2019, the Office of the FDOC Secretary

provided the following response:

> Appeal Denied:
>
> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.
>
> In addition, the institution was contacted and they provided this office with information regarding the issue you presented.

It is determined that the response made to you by Dr. Toledo on 9/25/19 appropriately addresses the issue you presented.

The Department is in the process of identifying and prioritizing all patients diagnosed with Hepatitis C, in accordance with HSB 15.03.09, Supplement 3. This process includes education, screening and evaluation for appropriateness of treatment, and will provide the Department with the necessary information needed to properly stage, monitor, and treat your case.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

See Doc. 38-2 at 5.

### b. 2021 Formal Grievance and Grievance Appeal

On July 26, 2021, Rukavishnikov submitted a formal grievance (#2107-213-200) to Union CI. He stated in pertinent part:

Pursuant to F.A.C. 33-103, I submit this formal grievance with the claim of [d]eliberate [i]ndifference to my serious medical needs by the denial of treatment for Hepatitus [sic] "C" virus diagnosed in 1999.

This act of [d]eliberate [i]ndifference has resulted in my present condition of advanced fibrosis of the liver. Therefore, due to the long delay in treatment and the resulting advanced fibrosis I now face a high risk of developing life threatening diseases, cirrosis [sic] and cancer.

This cruel and unusual punishment is prohibited by the U.S. Constitution's 8th Amendment.

17

> Due to my recent discovery that even though I was finally treated with DAA's, I still have irreparable damage as a result of the long delay in treatment. Therefore, it is my intention to file a 42 USC 1983 civil lawsuit for compensation against Julie L. Jones (the former Secretary of the Florida Department of Corrections), and F.D.O.C. (Florida Department of Corrections).
>
> I am exhausting my administrative remedies, however I am open to consider any relief offered.

See Doc. 38-2 at 13. On August 13, 2021, Union CI denied the formal grievance, stating:

> Your request for Administrative Remedy or Appeal has been received, reviewed and evaluated.
>
> Inmate RUKAVISHNIKOV, please be advised that reviewed records indicate that an abdominal ultra sound performed on 3/11/2021 was unremarkable with no evidence of a discrete mass within the liver. Labs performed on 6/26/2021 noted a normal AST and ALT range. Please be advised if you have any further questions or concerns, you may access sick call and address them with the health care staff.
>
> Based on the above information, your grievance is denied.

See Doc. 38-2 at 14. Thereafter, on August 23, 2021, Rukavishnikov submitted a grievance appeal (#21-6-24838), stating:

> Pursuant to F.A.C. 33-103, I submit this appeal to the Secretary of the Florida Department of Corrections for the review of the [d]enial of my formal grievance by Chief Health Officer E. Perez-Lugo and Assistance [sic] Warden T. Knox, on 8-13-21. (see copies attached)

18

> Both respondents failed to address the issue raised in my [f]ormal [g]rievance: [d]eliberate indifference to my serious medical need, by delay of treatment for the Hepatitis "C" virus, in violation of the U.S. Constitution's 8th Amendment; prohibition of cruel and unusual punishment.
>
> The ultrasound and AST/ALT ranges cited by the respondents are irrelevant to my claim because neither are reliable indicators of the liver fibrosis level caused by Hep. "C."
>
> In the Union C.I. medical lab dated 11-27-2017, in compliance with Court ordered staging for treatment, it is clearly shown that my fibrosis score is (.71), fibrosis stage is F-3, advanced fibrosis, borderline F-4.
>
> Even though I was later treated, (also by court order), I still suffer from advanced fibrosis due to the long delay in treatment.
>
> <u>Relief Sought</u>
> I am exhausting my administrative remedies however, I am open to consider any compensatory relief offered.

<u>See</u> Doc. 38-2 at 12. On September 17, 2021, the Office of the FDOC Secretary

provided the following response:

> Appeal Returned without Action:
>
> Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure. You are grieving a delay in medical treatment for Hepatitis C that you received in 2018. Also, you cannot use the grievance process for monetary gain and/or tort claims.
>
> Please be advised that you are outside the timeframe to grieve an issue that happened in 2018 and the

19

Institution should have returned your formal grievance.

Formal Grievances must be received no later than 15 calendar days from: 1. The date on which the informal grievance was responded to; or 2. The date on which the incident or action being grieved occurred.

Just because the Institution failed to return your formal grievance does not negate our office from returning your appeal.

Therefore, your appeal is being returned without action.

See Doc. 38-2 at 11. Rukavishnikov did not submit any other grievances concerning the claims at issue in this lawsuit.[8]

#### 4. <u>Turner</u> Step One

Under the first step of the <u>Turner</u> analysis, the Court must review the allegations in the Motion and Response and accept as true Rukavishnikov's allegations. See <u>Whatley</u>, 802 F.3d at 1209. If Rukavishnikov's allegations

---

[8] Rukavishnikov attaches other grievances as exhibits to his original Complaint and Response. See Docs. 1-2 to 1-5; Doc. 41-1 at 7-23. These additional grievances, all filed between September 2021 and March 2022, address three subjects: (1) requests for health services bulletins, books or pamphlets regarding post-HCV treatment aftercare, see Docs. 1-3 and 1-4; (2) requests for a "Hepatitis 'C' diet" and/or "liver-friendly vitamins for Hepatitis 'C' after treatment care," see Doc. 1-2; and (3) requests for medication to resolve kidney pain, see Doc. 1-5. Upon review, the Court finds that these grievances do not concern the delay of DAA treatment or Rukavishnikov's assertions of an ADA or RA violation; as such, these grievances failed to alert officials to the issues raised in the Second Amended Complaint. See <u>Chandler</u>, 379 F.3d at 1287 (noting that the purpose of administrative exhaustion "'is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues.'") (citation omitted).

show a failure to exhaust, then dismissal would be appropriate. Id. But, Rukavishnikov alleges that he completed the grievance process by filing the two formal grievances (#2107-213-200 and #1909-213-042) and appealing the denial of each formal grievance (#21-6-24838 and #19-6-36799). See Response at 3-5, 7. Accepting Rukavishnikov's view of the facts as true, the Court cannot dismiss his claims at the first step of the Turner analysis.

### 5. Turner Step Two

As dismissal would not be appropriate based on Rukavishnikov's allegations in the Response, the Court next turns to the second prong of the Turner analysis. Here, the Court determines that Rukavishnikov's 2019 and 2021 formal grievances do not satisfy the PLRA's exhaustion requirement. In his 2019 formal grievance and related grievance appeal, Rukavishnikov did not grieve the delay in receiving DAA treatment or his allegations of ADA or RA violations. Instead, he used that grievance process to seek a second round of DAA treatment. As such, the 2019 formal grievance did not satisfy the PLRA's exhaustion requirement with respect to the claims Rukavishnikov raises in this lawsuit.

As for Rukavishnikov's 2021 formal grievance and related grievance appeal, FDOC does not dispute that this set of grievances addresses the delay in receiving DAA treatment. But, FDOC argues, and the Court agrees, that the 2021 formal grievance is untimely. Rukavishnikov submitted the 2021 formal

21

grievance years after he alleges he first learned of the availability of DAAs (2017) and after he had received treatment (2018). An "untimely grievance does not satisfy the exhaustion requirement of the PLRA." See Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005). Since the FDOC Secretary returned Rukavishnikov's appeal without action, citing his failure to timely file the formal grievance, Rukavishnikov has not properly exhausted his remedies.

The fact that officials at the institutional level responded to Rukavishnikov's 2021 formal grievance on the merits does not change the outcome here. Of course, a prison system can waive strict compliance with its grievance procedures, in which case "a procedural flaw ignored by a prison cannot later be resurrected by the District Court to defeat exhaustion." Whatley, 802 F.3d at 1215. But "a prison does not waive a procedural defect unless and until it decides the procedurally flawed grievance on the merits at the last available stage of administrative review." Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) (Whatley II). "If a state's last administrative body denies a grievance for valid procedural reasons, the court is required to find that grievance unexhausted under the PLRA." Whatley, 802 F.3d at 1216 (Vinson, J., concurring). FDOC's grievance regulations permit a grievance appeal to be returned without action for a variety of reasons, Fla. Admin. Code R. 33-103.007(6)(d), including if "[t]he formal grievance was not received within 15 calendar days of the date on which the incident or action being

22

complained about occurred, if an informal grievance was not filed pursuant to subsection 33-103.006(3), F.A.C," Fla. Admin. Code R. 33.103.014(1)(e). That is what happened here. The FDOC Secretary returned Rukavishnikov's 2021 grievance appeal without action because it explicitly found that his 2021 formal grievance was not filed within the 15-day window. Thus, although officials at the institutional level denied Rukavishnikov's 2021 formal grievance on the merits, FDOC did not waive the procedural defect because it did not decide the procedurally flawed grievance on the merits at the last stage of review. <u>Whatley II</u>, 898 F.3d at 1083.

In sum, the FDOC began treating Rukavishnikov's chronic HCV with DAAs in August 2018. Rukavishnikov alleges that he no longer had detectable levels of the virus by 2019. <u>See</u> Response at 3. But he did not grieve the delay in receiving DAAs, or more generally, the delay in receiving HCV treatment, until July 26, 2021, and the FDOC Secretary determined that Rukavishnikov's grievance was untimely. Because Rukavishnikov did not properly exhaust available administrative remedies before filing suit, the Motion is due to be granted and Rukavishnikov's claims dismissed for failure to exhaust.[9]

---

[9] Insofar as Rukavishnikov alleges that he exhausted his administrative remedies by filing the grievances in 2021 and 2022 regarding a HCV diet, vitamins, medication for kidney pain, and health services bulletins or books regarding post-HCV treatment aftercare, <u>see</u> Response at 4-5, the Court finds that those grievances are not related to the claims at issue in this lawsuit, and as such, cannot satisfy the exhaustion requirement.

## B. Statute of Limitations

Because Rukavishnikov's claims against FDOC are due to be dismissed for failure to exhaust administrative remedies, the Court need not address FDOC's remaining argument that Rukavishnikov's claims are barred by the statute of limitations. Therefore, as to this issue, the Motion is due to be denied without prejudice.

Accordingly, it is now

**ORDERED AND ADJUDGED**:

1.     Defendant FDOC's Motion to Dismiss (Doc. 38) is **GRANTED** to the extent FDOC seeks dismissal for Rukavishnikov's failure to exhaust administrative remedies. In all other respects, the Motion is denied without prejudice.

2.     Plaintiff Valery Rukavishnikov's Second Amended Complaint (Doc. 29) is **DISMISSED without prejudice**.

3.     The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of July, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

24

Jax-10 7/3
c:      Valery Rukavishnikov, #193920
        Counsel of record